IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
CARNECIA ROBINSON,                            )
                          Plaintiff,          )
                                              )
v.                                            )     Civil Action No. 07-675 (RBW)
                                              )
DISTRICT OF COLUMBIA,                         )
                          Defendant.          )
_____)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### BACKGROUND

Historically, in IDEA cases in this Court, Plaintiff's counsel has often received communications from different attorneys representing the Defendant requesting information regarding administrative proceedings, including the dates of hearings and HODs.[1] Plaintiff's counsel typically responds to such requests in the same business day.

The Plaintiff filed her Complaint in this case on April 13, 2007. The Defendant sought and received the Plaintiff's consent for an extension of time to file its Answer, and on July 27, 2007, the Court granted the Defendant's motion and ordered the Defendant to respond to the Complaint by August 20, 2007.

In the interim, in a separate case being litigated by Plaintiff's counsel against the District of Columbia, the Defendant filed motion to dismiss nearly identical to the Defendant's Motion in this case. See 07-cv-795 (CKK). In that case, however, at the time of the filing of the motion the Defendant had not filed an Answer to the Complaint. After the filing of the motion in that case, the plaintiff amended her complaint to correct the alleged failings, as was her right under Federal

---

[1] For example, in almost every case, Defendant's counsel requests the full name of the child, as that information cannot be stated in the complaint.

Rule of Civil Procedure 15(a).[2]

In the case at bar, on August 20, 2007, the Defendant filed its Motion to Dismiss. Simultaneously, it filed its Answer, thus preventing the Plaintiff from amending her Complaint as a matter of right.[3] Despite the additional time taken in drafting the Answer, the Defendant responded to nearly every allegation in the Complaint with a statement that the Defendant lacked information necessary to respond, even to statements regarding the Defendant's own behavior.

Prior to the filing of its Motion the Defendant did not contact Plaintiff's counsel regarding the administrative proceedings in this case, and did not in any way indicate to the Plaintiff that it had had difficulty obtaining the relevant documentation of the administrative proceedings.

## ARGUMENT

## I.     THE DEFENDANT HAS OFFERED NO SUPPORT FOR ITS RULE 12(b)(1) CLAIM OF LACK OF JURISDICTION

The Defendant has requested dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but though it bears the burden of production at a minimum, it has offered absolutely no evidence of the absence of jurisdiction, whether for a failure to exhaust or for any other reason.

"Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it…If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1996)(internal citation

---

[2] "The Federal Rules of Civil Procedure guarantee a plaintiff an absolute right to amend its complaint once at any time before the defendant has filed a responsive pleading…we have repeatedly clarified that a motion to dismiss is not a responsive pleading for the purposes of Rule 15." James. V. Hurson Assocs. v. Glickman, 229 F.3d 277, 282-3 (D.C. Cir. 2000)(internal citations omitted).
[3] The Plaintiff has since requested leave to amend her Complaint, but has received no response.

omitted). The Defendant has made no effort at all to meet that burden in its Motion. Instead, it simply attacks the Complaint. In the section of the Motion one would most expect to find the Defendant's evidence, the section entitled "Plaintiffs have Failed to exhaust their Administrative Remedies," there is no shred of evidence, or even an indication of an attempt to find evidence.

Theoretically, the Defendant might have met its burden in a number of ways. It might have presented an affidavit from an appropriate person stating that no administrative decision had ever been issued regarding this child. It might have presented copies of correspondence to the Plaintiff requesting relevant information, to which the Plaintiff had not responded.

The Defendant did not present any such thing to support its claim that the Plaintiff did not exhaust her administrative remedies for two very good reasons: 1) the Plaintiff did in fact exhaust her administrative remedies; and 2) the Defendant made absolutely no inquiry into the question before filing its Motion.[4]

Moreover, not only did the Defendant fail in its affirmative duty to make an inquiry into the truth of its allegations, it took affirmative action to avoid receiving relevant information. As recounted above, the Defendant, fresh from its recent experience the last time it filed this motion (also before making any inquiry), made sure to file its Answer along with its Motion so as to avoid an amendment to the Complaint, which amendment would have provided it exactly the information it now claims it lacks.

Because the Defendant has offered no evidence whatsoever in support of its Rule 12(b)(1) claim of lack of jurisdiction, and has made no inquiry whatsoever, the Court should deny the Motion.

## II.    THE PLAINTIFF'S APPROPRIATELY PLED HER COMPLAINT

While the Defendant has requested dismissal "pursuant to Fed. R. Civ. P. 12(b)(1)", it has

---

[4] For this and other reasons, the Plaintiff is preparing a Rule 11 motion regarding the Defendant's behavior.

made absolutely no showing of jurisdictional inadequacy and has only obliquely alleged that the Court lacks jurisdiction. Instead, the Defendant requests dismissal on the grounds of perceived inadequacies in the phrasing of the Plaintiff's Complaint, an argument which must fail for at least two reasons. First, the absence of the Defendant's desired information – the date of the Plaintiff's administrative hearing – in the Complaint does not prove or even suggest the absence of a hearing. Second, the Plaintiff was not required to meet the Defendant's heightened standards of specificity in pleading her Complaint, which was and is, sufficient.

**A. The Plaintiff Properly Pled This Court's Jurisdiction Under 28 U.S.C. § 1331.**

"This is a claim for injunctive relief and declaratory judgment brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*." (Compl. ¶ 1.) Electing to ignore this sentence, the Defendant challenges the Court's jurisdiction under 28 U.S.C. § 1331, stating that "Plaintiffs have failed to cite any independent federal statute in the jurisdictional paragraph. Accordingly, this Court has no jurisdiction over Plaintiffs' claims." (Def.'s Mot. Dismiss 5.) This argument is simply ridiculous.

Were the Court to assume that the Defendant lacked proper notice of the underlying federal substantive law governing the Plaintiff's complaint, the Defendant's five-page treatment of IDEA procedures would be mystifying.[5] (See Def.'s Mot. Dismiss 5-9.) However, since the Defendant was clearly aware of the applicable federal laws, and since the Plaintiff's claims arise under those laws in the clearest Constitutional sense of that phrase, 28 U.S.C. § 1331 gives this Court subject matter jurisdiction over the Plaintiff's Complaint: that the District of Columbia Public Schools ("DCPS") violated the IDEA.

---

[5] The Defendant incorrectly states in its Motion that the Plaintiff brought her Complaint under IDEIA, the Individuals with Disabilities Education Improvement Act of 2004, the act that amended the Individuals with Disabilities Education Act. However, 20 U.S.C. § 1400 et seq. remains the "Individuals with Disabilities Education Act." See e.g., Jester v. Gov't of the Dist. Of Columbia, 474 F.3d 820, 821 (D.C. Cir. 2007)(referring repeatedly to the requirements of the Individuals with Disabilities Education Act (IDEA)").

**B. The Failure to Exhaust Administrative Remedies is an Affirmative Defense.**

The Defendant, declaring in its Motion that the Plaintiff has failed to show exhaustion of administrative remedies, does not acknowledge that the failure to exhaust administrative remedies is an affirmative defense, which the Plaintiff is not required to anticipate in her complaint. Mondy v. Secretary of Army, 845 F.2d 1051, 1059 note 3 (D.C. Cir. 1988) (MacKinnon, J. concurring); see also Bowden, 106 F.3d 433, 437. Confusingly, the Defendant appears aware that exhaustion is an affirmative defense, as it is the "second affirmative defense" listed in its Answer. (Answer at 5.) However, instead of prefacing its motion with any sort of factual inquiry or supporting its request for dismissal with applicable law, the Defendant has seen fit to waste the Plaintiff's and this Court's time with its unsupported – and unsupportable – argument.

The Supreme Court was recently faced with a circuit court's judgment interpretings the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997 et seq. ("PLRA") to require prisoners to plead exhaustion of administrative remedies in their federal court complaints. Jones v. Bock, 127 S. Ct. 910 (2007). Lower courts had inferred an exhaustion pleading requirement from language in the PLRA stating that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress had gone further still with regard to prisoner complaints by requiring judicial screening of inmate complaints, which may be dismissed sua sponte absent any responsive pleading. See 28 U.S.C. §§ 1915A(a)-(b).

Within that context, a unanimous Court rejected the circuit's heightened pleading standard:

> We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. We understand the reasons behind the decisions of some lower courts to impose a pleading requirement on plaintiffs in this context, but that effort cannot fairly be viewed as an interpretation of the PLRA. … No mere omission …which it may seem wise to have specifically provided for, justifies any judicial addition to the language of the statute. Given that the PLRA does not itself require plaintiffs to plead exhaustion, such a result must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.

Jones, 127 S. Ct. at 921-22. (internal quotations and citations omitted.)

The Defendant has offered absolutely no support for its contention that the Plaintiff must plead exhaustion, much less any reason to change established law. The Defendant's argument for dismissal on that basis is therefore frivolous, and should be rejected.

### C. There Is No Heightened Pleading Requirement in IDEA Cases.

The Plaintiff stated, in her initial complaint, inter alia, the following basis for this Court's jurisdiction:

> This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that the action arises under the laws of the United States. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2). The Plaintiff has participated in an impartial administrative hearing conducted by the District of Columbia Schools State Enforcement and Investigation Division. The Hearing Officer dismissed the Petitioner's complaint.

Compl. ¶¶ 2, 3. The Defendant's deliberately obtuse reading notwithstanding, the Plaintiff appropriately stated this Court's grounds for jurisdiction.[6]

The Supreme Court of the United States has stated – unanimously – that Federal Rule of Civil Procedure 8(a) means what it says, and that the specificity requirements of Federal Rule of Civil Procedure 9(b) are not subject to enlargement absent an act of Congress. See e.g. Hill v. McDonough, 126 S. Ct. 2096, 2103 (2006), ("Specific pleading requirements are mandated by

---

[6] "Moreover, the court is not limited to the allegations contained in the complaint… Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings." Lipsman v. Sec'y of the Army, 257 F. Supp. 2d 3, 6 (D.D.C. 2003)(internal citation omitted). The Plaintiff attaches as exhibits her administrative complaint and written order. Exhibits 1, 2.

6

the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case

determinations of the federal courts").

The Defendant offers no support for its contention that the Plaintiff must plead

exhaustion with specificity, including the "nature, time or place of any…hearing," in addition to

other information, in order to meet the Federal Rules' requirement that her Complaint contain "a

short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R.

Civ. P. 8(a). Instead, the Defendant relies solely on the IDEA's "right to sue" provision:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who
> does not have the right to an appeal under subsection (g), and any party aggrieved by the
> findings and decision made under this subsection, shall have the right to bring a civil
> action with respect to the complaint presented pursuant to this section, which action may
> be brought in any State court of competent jurisdiction or in a district court of the United
> States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

Nowhere in this provision or elsewhere in the IDEA does Congress attempt to establish

heightened pleading standards for such cases.[7] Furthermore, it does not appear that courts have

endeavored to establish such heightened requirements, particularly as the Defendant has not cited

any authority for its proposed reading. Given the Supreme Court's clear statement on the subject,

it is hard to imagine that any court would.

### D.    The Defendant's Argument Misrepresents Applicable Law

The Defendant's reliance on Federal Rule of Civil Procedure 9(f) is both misplaced and

misleading. From within the only Federal Rule where a heightened pleading standard might be

found, the Defendant cites a rule which courts have repeatedly held <u>not</u> to require time and place

---

[7] This section likewise refers to this complaint as "a civil action" and not an "appeal", yet the Defendant seems to
believe that such an identification is a necessary component of the complaint. (See Def.'s Mot. Dismiss 7. "the
Complaint, even if read most favorably to Plaintiffs, nowhere indicates that it is an "appeal" of *any* HOD…").

to be pled with specificity.[8] See e.g. Supreme Wine Co. Distributors of New England, 198 F.

Supp 318, 320 (D. Mass. 1961)("Rule 9(f) does not require specificity in pleading time and

place, and the indefiniteness of the allegations made has been held not to justify dismissal of the

action.")(internal citation omitted).

Furthermore, the "fatal deficiency" cited by the Defendant from Wade v. Washington

Metropolitan Area Transit Authority, 2005 Westlaw 1513137 (D.D.C. 1995) was that plaintiff's

failure to include, in her third amended complaint, any statement of the time and place at which

alleged incidents of sexual harassment occurred, rendering one of her five claims "insufficient,

as it does not give [the defendant] fair notice of the claim against him." Id. Nowhere does the

Defendant contend that it lacks sufficient notice of the claims against it – the overriding principle

of "notice pleading" – instead alleging, without basis, that the Plaintiff's complaint should be

dismissed.[9]

Regardless, the Defendant contends, without identifying any portion of the Complaint,

that the Plaintiff failed to comply with Rule 8(a)(2). The Defendant has not explained in what

way the statement of the case is lacking.

However, even if the 31 relevant paragraphs of the Complaint do somehow fail to state an

IDEA violation, that fact would not strip this Court of subject matter jurisdiction, as the

Defendant contends. (Def.'s Mot. Dismiss 7.) Neither of the two cases cited by the Defendant

stands for this bizarre proposition. Were the Complaint deficient, the Court might dismiss it for

failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). The

Defendant does not request dismissal on such grounds and has made no showing that the

---

[8] Furthermore, the Plaintiff's complaint – that DCPS has failed to provide her child a free appropriate public education – was accompanied by material averments of time and place. See Compl. ¶¶ 7-11, 14-20, 22, 27.
[9] The Defendant does state that it was unable to determine if it could raise a valid statute of limitations defense, another affirmative defense which the Plaintiff is not required to predict. (Def.'s Mot. Dismiss 6, note 1.)

Plaintiff has failed to state her claim appropriately, perhaps because it is seeking to avoid the more lenient standard by which 12(b)(6) motions are determined.[10]

## III.    DISMISSAL IS AN INAPPROPRIATE REMEDY

Even were the Defendant's arguments meritorious, dismissal would still be an inappropriate remedy for its perceived insufficiencies in the Plaintiff's Complaint. See e.g. M.K. v. Tenet, 99 F. Supp. 2d 12, 19 (D.D.C. 2000)("[T]he defendants may move for a more definite statement of the plaintiff's claims under Federal Rule of Civil Procedure 12(e)…Because any indefiniteness can be remedied by this less drastic means, the court declines to dismiss the complaint for indefiniteness at this juncture")(internal citation omitted).

The Defendant could have obtained the information it considers lacking through a motion for a more definite statement, a two-minute telephone call or a one sentence e-mail. Since the District of Columbia was both present at and party to the Plaintiff's administrative proceedings, it could also have consulted its own records, as the Plaintiff's daughter is a school-aged child living within its jurisdiction. (Answer at 4.) Under the circumstances, such an inquiry would have been quite reasonable before making the representation to this Court that the Plaintiff had not exhausted her administrative remedies, particularly since, as the Defendant acknowledges, her Complaint stated:

> The Plaintiff has participated in an impartial administrative hearing conducted by the District of Columbia Schools State Enforcement and Investigation Division. The Hearing Officer denied the Plaintiff all relief.

(Compl. ¶ 3.)

The Defendant, instead of making any reasonable inquiry into the allegations in the

---

[10] "In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations."
Openshaw v. Consol. Eng'g Servs., 2007 U.S. Dist. LEXIS 26280; No. 06-1884 (CKK), Memorandum Opinion at 4 (D.D.C. 2007).

Plaintiff's Complaint, has now moved for dismissal. Despite the Court's extension of its time to respond to the Complaint, the Defendant has now filed two documents with the Court showing its apparent unwillingness to make any inquiry into the facts of this case or to confer with Plaintiff's counsel, since either of those efforts would have immediately yielded the portions of the administrative record of which the Defendant claims to have no knowledge. Under the circumstances of this case, dismissal is inappropriate regardless of the Court's view of the Complaint.

## IV.    THIS COURT HAS JURISDICTION OVER THE PLAINTIFF'S COMPLAINT

As addressed above, failure to exhaust is an affirmative defense. As addressed above, the Defendant has offered nothing to raise any question regarding exhaustion. Nonetheless, in the interest of efficiency the Plaintiff submits the two attached exhibits, which make clear that the Plaintiff has exhausted her administrative remedies. See Exhibits 1, 2. The issues in her Complaint were heard by an impartial hearing officer in two "due process hearings" convened by the District of Columbia Public Schools State Enforcement and Investigation Division on November 28, 2006 and January 9, 2007. An administrative order was issued on January 16, 2007 dismissing her administrative complaint, and the Plaintiff filed her Complaint with this Court on April 13, 2007.

The Plaintiff has exhausted her available administrative remedies and this Court has jurisdiction over the claims in her Complaint. With this information easily available, the Defendant's motion should be denied. More importantly, it should never have been filed in the first place.

10

Respectfully submitted,
/s/_____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

**DUE PROCESS COMPLAINT NOTICE**
In re J██████ R███████
**September 28, 2006**

| | |
|---|---|
| **Petitioner**: | Carnecia Robinson |
| **Student**: | J██████ R███ |
| **DOB**: | ███/98 |
| **Current School**: | Friendship Southeast Elementary Academy ("Friendship") |
| | **NOTE: THIS COMPLAINT IS SOLELY FOR VIOLATIONS BY DCPS.** |
| **Residence**: | 1320 Congress Street, S.E. |
| | Washington, DC 20032 |

**Petitioner's Contact Information for Special Education Purposes:**

Tyrka & Houck, LLP
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**Violations:**

1. Failure to provide an appropriate placement since the start of the 2006-2007 SY.
2. Failure to conduct and review evaluations in all areas of suspected disability.
3. Failure to determine an appropriate disability classification.
4. Failure to develop an appropriate IEP.
5. Failure to provide an appropriate placement.

**Facts:**

1. J██████ has been enrolled at Friendship since the start of the 2005-2006 SY.
2. At an MDT meeting convened on February 16, 2006, the Team:
   a) noted that J██████ "struggles with work and completing task [sic] on 2nd grade level";
   b) discussed J██████'s behavioral problems;
   c) developed a student evaluation plan recommending, *inter alia*, completion of a functional behavioral assessment of J██████.
3. A May 25, 2006 psychoeducational evaluation of J██████ reported that her classroom teacher had concerns about her academic performance and behavior.
4. At a June 20, 2006 MDT meeting, the Team recommended, *inter alia*, completion of a clinical evaluation and a functional behavioral assessment.
5. At an August 3, 2006 MDT meeting:
   a) the Team:
      i) determined that J██████ qualifies for special education and related services as a qualified child with a Multiple Disabilities, including a Learning Disability ("LD") and Other Health Impairment ("OHI");

**Exhibit 1**

ii) developed an IEP prescribing 25 hours of specialized instruction, 1 hour of occupational therapy services, 1 hour of speech and language therapy, and 30 minutes of counseling per week;

iii) determined that Friendship was no longer an appropriate placement;

iv) recommended placement in a full-time setting;

b) the Parent's advocate:

i) contested the adequacy of J██████'s clinical evaluation and her functional behavioral assessment;

ii) questioned the appropriateness of not including an additional disability classification of Emotionally Disturbed ("ED") on J██████'s IEP;

iii) requested completion of an additional clinical evaluation and a functional behavioral assessment;

iv) proposed Rock Creek Academy as an appropriate alternative educational placement;

c) the Team:

i) recommended completion of an additional clinical evaluation;

ii) agreed to notify DCPS of J██████'s need for an alternative placement;

6. An August 28, 2006 ADHD screener diagnosed J████ with Attention Deficit Hyperactivity Disorder.

7. An August 28, 2006 clinical evaluation of J████ recommended participation in individual psychotherapy.

8. At a September 13, 2006 MDT meeting:

a) the Team:

i) recommended a revised disability classification of Multiply Disabled ("MD"), including OHI, Speech and Language Impaired ("SLI"), and LD;

ii) rejected an additional disability classification of ED;

iii) recommended a smaller placement for J██████;

b) the Petitioner's advocate:

i) contested the validity of J██████'s current clinical evaluations;

ii) objected to the rejection of an additional disability classification of ED;

iii) requested additional clinical testing to confirm a disability classification of ED;

iv) proposed Rock Creek Academy as an appropriate alternative placement;

v) reported that J████ had been accepted for admission into Rock Creek Academy;

c) DCPS:

i) neglected to participate in the review of J██████'s evaluations and in the discussion of her current disability classification and special education needs;

ii) proposed Prospect Learning Center ("Prospect") as a placement;

iii) failed to answer questions from the Team about the proposed placement at Prospect Learning Center, including those regarding the student-to-teacher ratio, teacher qualifications, and the age and disability classifications of the other students;

d) the Petitioner's advocate:

i) objected to DCPS' failure to fully participate in the meeting and to provide all necessary information about the appropriateness of its proposed placement at Prospect;

ii) reserved a determination on the appropriateness of Prospect;

e) the Team:

     i)  agreed to gather additional information for completion of a functional behavioral
        assessment and development of a behavior intervention plan;
     ii)  did not make any finding or recommendation regarding the appropriateness of
        Prospect for J█████

9. An adequate clinical evaluation of J█████ has never been completed.
10. An adequate functional behavioral assessment and behavior intervention plan have never
been completed.
11. DCPS has known of J█████'s need for an appropriate alternative placement in a full-time
special education program since August 3, 2006.
12. DCPS has never:
    a)  offered an appropriate educational placement for J█████;
    b)  issued a prior notice for an appropriate alternative educational placement;
    c)  placed J█████ in an appropriate full-time special educational program.
13. J█████ has been accepted for admission into Rock Creek Academy.
14. J█████ will receive educational benefit at Rock Creek Academy.

**Proposed resolution:**

1. DCPS to immediately fund and place J█████ at Rock Creek Academy with transportation.
2. DCPS to immediately fund an independent clinical evaluation and an independent functional
behavioral assessment of J█████.
3. DCPS to convene an MDT meeting within thirty (30) days of J█████'s enrollment at RCA
to:
    a)  review all of her current evaluations,
    b)  revise her IEP, and
    c)  develop an appropriate compensatory education plan to compensate J█████ for its
       failure to provide an appropriate placement since August 3, 2006.
4. DCPS to convene an MDT meeting within ten (10) days of receiving J█████'s independent
clinical evaluation and her independent functional behavioral assessment to:
    a)  review these evaluations,
    b)  revise J█████'s IEP, and
    c)  develop an appropriate compensatory education to compensate J█████ for its failure to:
       i)  timely conduct and review an adequate functional behavioral assessment since
         August 3, 2006;
       ii)  timely conduct and review an adequate clinical evaluation of J█████ since August 3,
         2006.
5. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with
authority:
    a.  to immediately fund and place J█████ at Rock Creek Academy with transportation,
    b.  immediately fund an independent clinical evaluation and an independent functional
       behavioral assessment of J█████,

    c. to convene an MDT meeting within thirty (30) days of J██████'s enrollment at RCA, and

    d. to convene an MDT meeting within ten (10) days of receiving J██████'s independent clinical evaluation and independent functional behavioral assessment

are necessary attendees at any resolution meeting.

2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.

4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.


Respectfully Submitted,


Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

TRANSMISSION VERIFICATION REPORT

```
TIME  : 09/28/2006 17:27
NAME  : TYRKA & ASSOCIATES
FAX   : 2022654264
TEL   : 2022654260
SER.# : 000A6J693992
```

```
DATE,TIME        09/28  17:25
FAX NO./NAME     SHO
DURATION         00:01:32
PAGE(S)          05
RESULT           OK
MODE             STANDARD
                 ECM
```

# TYRKA & ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:* SHO + OGC

*Fax Number:*

*From:* Douglas Tyrka

*Regarding:* J██████ & R████████

*# of pages:* 5

*Notes:*

**District of Columbia Public Schools**
*State Enforcement Investigative Division*
**STUDENT HEARING OFFICE**
825 North Capitol Street, N.E.
8ᵀᴴ Floor
Washington, D.C. 20002
FAX: (202) 442-5556



*FACSIMILE SHEET*

Date: January 16, 2007

TO: Douglas Tyrka

FROM: STUDENT HEARING OFFICE

RE: R███████, J██████

TOTAL NUMBER OF PAGES, INCLUDING COVER: 9

COMMENTS:

*CONFIDENTIALITY NTOICE*: The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

**Exhibit 2**

# District of Columbia Public Schools

## State Enforcement and Investigation Division

Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

| | | |
|---|---|---|
| J███████R███████, STUDENT | ) | |
| | ) | |
| Date of Birth: ███████, 1998 | ) | Hearing Dates: November 28, 2006 |
| | ) | January 9, 2007 |
| Petitioner, | ) | |
| | ) | Complaint Filed: September 28, 2006 |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Friendship Southeast Elem. Acad. | ) | |

## HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Carnecia Robinson, Mother |
| | 1320 Congress Street, S.E. |
| | Washington, D.C. 20032 |
| | |
| **Counsel for Petitioner:** | Douglas Tyrka, Esquire |
| | 1726 Connecticut Avenue, N.W.; Suite 400 |
| | Washington, D.C. 20009 |
| | (202) 265-4260; Fax: (202) 265-4264 |
| | |
| **Counsel for DCPS:** | Quinne Harris-Lindsey, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| Child | J█████ R█████ |
|---|---|
| Child's Parent(s) (specific relationship) | Carnecia Robinson, Mother |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Quinne Harris-Lindsey, Esquire |
| Placement Specialist, DCPS | Evan Murray |
| Educational Advocate | Sharon Millis |
| Principal or Designee | Keren Plowden, Executive Director for Student Services, Rock Creek Academy |

## Jurisdiction

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

## Introduction

Petitioner is an eight year-old student attending Friendship Southeast Elementary Academy ("Friendship"). On September 28, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to (1) provide an appropriate placement, (2) conduct necessary evaluations, (3) determine an appropriate disability classification, and (4) develop an appropriate Individualized Education Program ("IEP"). The due process hearing was convened on January 9, 2007. The parties' Five Day Disclosure Notices were admitted into evidence. Petitioner's counsel moved for a Default Judgment for DCPS' failure to file a response to the *Complaint*. The hearing officer denied the motion because it was not filed in advance of the hearing, thus depriving DCPS of a meaningful opportunity to prepare a response.[1] Petitioner's counsel stipulated that Petitioner's claims are limited to the 2006-2007 school year and that he was not seeking a clinical evaluation.

## Petitioner's Witnesses

Sharon Millis, Educational Advocate
Keren Plowden, Executive Director for Student Services, Rock Creek Academy

## DCPS' Witnesses

Evan Murray, Placement Specialist, DCPS

## Findings of Fact

1. Petitioner is an eight year-old student attending Friendship.[2]

2. On August 3, 2006, Friendship convened a Multidisciplinary Team ("MDT") meeting to determine Petitioner's eligibility for special education services. The MDT determined that Petitioner was eligible and proceeded to develop an IEP for Petitioner.

---

[1] The DCPS Standard Operating Procedures ("SOP") require pre-hearing motions to be filed no later than five business days before the hearing. SOP, §401(C)(4).
[2] *Complaint* at 1.

The MDT classified Petitioner as Learning Disabled ("LD") and prescribed full-time specialized education services, one hour of occupational therapy per week, one hour of speech and language services per week, and 30 minutes of group counseling per week. The MDT determined that Friendship "is no longer appropriate for Petitioner." Petitioner's advocate requested that Petitioner be placed at Rock Creek Academy ("RCA"). The MDT deferred the decision of placement to the State Education Agency, DCPS. DCPS was not represented at the meeting.[3]

3. Friendship convened another MDT meeting on September 13, 2006 "to review evaluations that were completed." The psychologist reported that Petitioner's Attention Deficit Hyperactivity ("ADHD") scores were "elevated in several areas (oppositional, cognitive-inattention, hyperactivity, anxious, shy, and perfectionism. A clinical evaluation was also completed. The clinical included the Rorschach and the Children's Sentence Completion form... [Petitioner] has significant cognitive difficulties that impact her ability to articulate herself and relate with others. Additionally, [Petitioner] experiences a great deal of difficulty and frustration communicating her ideas. Recommendations included therapy and an ADHD screen." The MDT determined that Petitioner had multiple disabilities, LD and other health impaired ("OHI").[4]

4. At the September 13th MDT meeting, Petitioner's advocate again requested a placement at RCA. DCPS recommended Prospect Learning Center ("PLC"). PLC has 13 homeroom teachers certified in special education, five certified specialists, three psychologists, one occupational therapist, and two speech pathologists. Ms. Millis indicated that Petitioner could not accept or reject the placement before visiting PLC.[5]

5. Mr. Murray made the decision to propose PLC as a placement prior to the MDT meeting.[6] Mr. Murray participated in the MDT intermittently and did not participate in the discussion of Petitioner's evaluations and educational needs.[7]

6. Ms. Millis first visited PLC on behalf of Petitioner on November 22, 2006.[8]

7. If Petitioner were to attend PLC, she would be in a class of ten students.[9]

8. Rock Creek Academy ("RCA") accepted Petitioner on September 8, 2006.[10] RCA is a private day school offering full-time special education services. All of its students are funded by DCPS. RCA offers occupational therapy, speech and language services, and psychological counseling by licensed service providers. The student to teacher ratio is 6:1. If Petitioner were to attend RCA, she would be in a class of six

---

[3] Petitioner's Exhibit ("P.Exh.") No. 9.
[4] P.Exh. No. 11 at 1-5.
[5] Id. at 6-7.
[6] Testimony of Mr. Murray.
[7] Id.; testimony of Ms. Millis.
[8] Testimony of Ms. Millis.
[9] Id.
[10] P.Exh. No. 18.

students. All RCA students participate in a point and level behavior modification program that is reinforced daily.[11]

## Conclusions of Law

1. Petitioner offered no testimonial evidence to refute the appropriateness of the IEP or of the appropriateness of the classification. In fact, Petitioner did not introduce the IEP into evidence. The hearing officer's review of the meeting notes of the MDT meetings on August 3rd and September 13th did not reveal any information that would clearly establish the inappropriateness of Petitioner's classification. The September MDT added OHI as an additional classification and specifically stated that it had not determined that she was emotionally disturbed. At the hearing, Petitioner's counsel stipulated that he was not seeking a clinical evaluation. Thus, there is nothing in the record to contradict the appropriateness of the LD/OHI classification. The hearing officer concludes that Petitioner has failed to meet her burden of proving that her IEP and disability classification are inappropriate.

2. Petitioner's primary objection to the placement at PLC are that (1) Mr. Murray came to the September 13th meeting having already decided to recommend PLC, (2) Mr. Murray did not participate in the MDT's discussion of Petitioner's evaluations and needs, and (3) there was insufficient discussion of PLC's ability to meet Petitioner's needs. Mr. Murray admitted that he predetermined that PLC was the placement he would recommend at the meeting and that he did not participate in the discussion of Petitioner's evaluations and needs. However, Mr. Murray is but one member of the team, and all other members of the team took part in a thorough discussion of Petitioner's needs. Petitioner's mother was invited to propose a placement and she requested RCA. Mr. Murray proposed PLC, and the meeting notes include information provided at the meeting as to PLC's capability to meet the needs of a student with Petitioner's mix of disabilities. According to the meeting notes, Ms. Millis indicated that she could not accept or decline the proposed placement at PLC until visiting the school. However, Ms. Millis did not visit PLC on Petitioner's behalf until November 22nd, more than two months after the MDT meeting.

The September 13th MDT was properly constituted. The IEP team must include the parents of the child, at least one regular education teacher of the child, at least one special education teacher of the child, a representative of the public agency who is qualified to provide or supervise special education services, is knowledgeable about the general curriculum, and is knowledgeable about the availability of resources of the public agency, and an individual who can interpret the instructional implications of evaluation results.[12] The September 13th team met the regulatory requirements.[13]

---

[11] Testimony of Ms. Plowden.
[12] 34 C.F.R. §300.321(a).
[13] P.Exh. No. 11 at 1.

5

The placement determination must be made "by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options, and ... is based on the child's IEP."[14] Petitioner has not shown that the parent did not have a meaningful opportunity to participate in the placement decision. Although Mr. Murray's participation was limited to the determination of the placement location, the primary role of the LEA representative is to be "knowledgeable about the availability of resources of the public agency." Ideally, Mr. Murray would have come to the MDT meeting with more than one placement option and he would have fully participated in the meeting. However, the remaining members of the team were fully aware of Petitioner's evaluation results and educational needs when the discussion turned to placement.

Mr. Murray proposed a placement at a neighborhood school with a staff capable of providing educational benefit, as documented in the September 13th meeting notes. The parent was invited to propose a placement, and she proposed RCA. While the MDT accepted DCPS' proposal to place Petitioner at PLC, the parent neither accepted nor rejected DCPS' placement.[15] Ms. Millis indicated her intention to visit PLC before making a decision to accept or reject the placement. However, she made no effort to visit PLC until more than two months after the MDT meeting, and over nearly two months after the *Complaint* was filed. At the hearing, Ms. Millis offered no explanation for her delay in visiting PLC. However, the date of her visit, November 22nd, was less that one week before the first scheduled hearing date in this proceeding, November 28, 2006. Thus, Petitioner signaled her rejection of the placement by filing the *Complaint* two weeks after the MDT meeting, and that decision preceded Ms. Millis' visit to PLC. Ms. Millis' visit was made to support the allegation in the *Complaint* that PLC is an inappropriate placement for Petitioner rather than as a genuine effort to determine PLC's appropriateness for Petitioner.

The primary difference between DCPS' proposed placement at PLC and Petitioner's proposed placement at RCA appears to be class size. Petitioner would be in a class of ten students at PLC, while the maximum class size at RCA would be six. However, Petitioner offered no compelling evidence that this difference in class size would have a deleterious effect on her academic progress. A class of ten students would provide Petitioner considerable individual attention. While Petitioner would conceivably receive even more attention in the smaller class at RCA, that is not the test. In *Board of Education of the Hendrick Hudson Central School District v. Rowley* ("*Rowley*"),[16] the Supreme Court held that the local education agency ("LEA") is not compelled to optimize a disabled student's educational experience. Rather, the LEA must provide an environment in which the student can derive educational benefit.

---

[14] 34 C.F.R. §300.116(a)(1). Each public agency must ensure that a parent of a child with a disability is a member of any group that makes decisions on the educational placement of the parent's child. 34 C.F.R. §300.501(c)(1).
[15] P.Exh. No. 11 at 7; Ms. Millis' notes at 2.
[16] 458 U.S. 176 (1982).

The District Court and the Court of Appeals thus erred when they held that the Act requires New York to maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children. Desirable though that goal might be, it is not the standard that Congress imposed upon the States which receive funding under the Act...The statutory definition of "free appropriate public education," in addition to requiring that States provide each child with "specifically designed instruction," expressly requires the provision of "such... supportive services... as may be required to assist a handicapped child to *benefit* from special education"...We therefore conclude that the "basic floor of opportunity" provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.[17]

At PLC, Petitioner would be in a class of ten students, would be taught by a certified special education teacher, and would receive related services from licensed service providers. The hearing officer concludes that Petitioner has failed to meet her burden of proving, by a preponderance of the evidence, that PLC is not an appropriate placement for Petitioner.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, the testimony presented at the hearing, and the representations of the parties' counsel at the hearing, this 12th day of January 2007, it is hereby

**ORDERED**, that the Complaint is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED**, that this Order is effective immediately.

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

Terry Michael Banks
Hearing Officer

Date: January 12, 2007          Issued: 01\|06\|07

---

[17] *Id.* at 200-01.

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**CARNECIA ROBINSON,**                  )
                          **Plaintiff,** )
                                        )
**v.**                                  )    **Civil Action No. 07-675 (RBW)**
                                        )
**DISTRICT OF COLUMBIA,**               )
                          **Defendant.** )
_____)


**<u>ORDER</u>**


On consideration of the Plaintiff's Opposition to the Defendant's Motion to Dismiss, it is

hereby

ORDERED that the Defendant's Motion to Dismiss is **DENIED.**


                                        _____
                                        Reggie B. Walton
                                        United States District Judge